Thank you, Judge Miller, and may it please the Court. Under Section 2462, FERC had to file its district court action within five years of when its claim for civil penalties first accrued. There is no dispute that FERC's claim to impose civil penalties accrued in October of 2013, but the district court held that FERC's lawsuit here is to enforce its 2019 Penalty Assessment Order, not to impose liability in the first instance. That cannot be reconciled with the text or structure of Section 823B, subsection D, or FERC's own acknowledgment in its 1988 regulations that, under the judicial track, FERC's penalty assessment, quote, merely triggers de novo trial in district court. The glaring textual problem with the district court's analysis is its failure to account for the penalty recovery action of subsection D-5. If Section D-3 district court actions are to enforce civil penalties as the district court supposed, there is no work for Section D-5 to do. Our view of the statutory scheme, however, makes sense of all of its provisions. Under Section 823B, subsection D, a civil penalty proceeding begins with the commission providing notice, notice of the proposed penalty, that's Section D-1. And then there's essentially a fork in the road where the defendant can choose either the traditional formal adjudication path before the agency, that's Section D-2, or it can choose a de novo trial in federal district court, which is in Section D-3. That de novo trial is not confined to any administrative record, is tried to a jury, and the district court has no power to remand to the agency. Mr. McGill, if a party were to choose, and I know it's not that common for them to do so, an administrative law judge hearing, is it your view that the five-year period under 2462 would apply to the initiation of that administrative process? The five-year period to impose civil penalties would apply from the order to show cause, and that would stop the clock if the administrative path is chosen. But if the judicial path is chosen, the agency is not the fact finder. The jury is the fact finder. And that is a — that means that the district court is what imposes liability in the first instance. We know that the — of liability, right? I mean, FERC can't go to court until it's completed. To be sure, it is a procedural prerequisite to the suit. So it is unusual, isn't it, to have a statute of limitations where the claim accrues and the statute starts running before the party against whom it's running could go and initiate the action that's subject to the limitations period, isn't it? I don't think it's especially common, but this court recognized in Soto v. Sweetman that an administrative exhaustion requirement, which is essentially akin to this, would be — would not delay the accrual of a cause of action. But there — I mean, isn't that different? Because there — I mean, the cause of action there is 1983, and we've had sort of a long history of, you know, 1983 claims existing and how they work and accrual rules for them. And then layered on top of that, you have the PLRA that says, okay, there's this additional procedural requirement. You know, here the statute that — and so in that context, you know, maybe it makes sense to say, you know, accrual is whatever it is, and this procedural requirement is separate. Here are the statute that sort of defines the cause of action, and the statute that gives FERC the right to go to court doesn't give them that right until they've completed the administrative process. We also cited in our briefs, Your Honor, the Supreme Court's McMahon case, which had a 60-day period that the plaintiff had to wait out before filing. So these procedural prerequisites are not unknown in the law. It's a hefty prerequisite, though, because this administrative process, whether through an ALJ or through FERC's, I guess, the abbreviated process still requires investigation. It requires an adjudication. It gives the parties time to answer and to provide evidentiary proof. The regulations have made it such that it's a pretty robust process, is it not, before even getting to court? There are two parts to that. First, the statute provides only that FERC shall promptly assess the penalty. It doesn't provide for any of these additional procedures that you've mentioned. The second point is that I would not agree that it's a particularly robust procedure. To be sure, we're allowed to answer, but critically there's no cross-examination of the adverse witnesses. There's no compulsory process that would allow us to gather evidence for our defense. And this brings us to the preceding argument in our briefs, which is the FERC process would raise serious due process concerns if it actually imposed a legally enforceable penalty. It doesn't. The legally enforceable penalty is imposed by the district court proceeding. If FERC imposed a legally enforceable penalty, it would have to comport with due process. Goldberg v. Kelly says you can't impose serious penalties in all but the rarest of cases without some modicum of cross-examination. Then how do you square that with the language of 823BD3B that says, in order of affirming the assessment of the civil penalty, are you distinguishing an assessment from the imposition of a penalty? The imposition of the penalty here is what creates an obligation, a legal obligation to pay. The thought exercise I would invite the court to participate in is, what happens if we win this appeal? What happens if the FERC's action is untimely? The FERC penalty assessment is a nullity. It cannot be enforced. We have no liability. That is because liability is determined under this scheme in the first instance in the district court. It is a de novo trial to a jury. Nobody is limited by any administrative record. FERC is taking new discovery. We're taking new discovery. And then the district court has no power to remand to the agency. This is unlike any form of administrative review of agency action that I've ever seen. But should it be, if we're taking your argument, you're wanting a more sort of robust adversarial adjudication of some sort, but aren't we simply required to, in order to define this as a proceeding, aren't we just supposed to look at whether or not there is some adversarial adjudication consistent with what our sister circuit has done in the Second Circuit under Capozzi? The proceeding has to be under 2462. So Capozzi was kind of the mirror image of this case. In Capozzi, the question was whether the assessment was subject to any statute of limitations at all. And the government's position in that case was that it was not, because it didn't actually result in any enforceable penalty. And that was, and wasn't adequately adversarial, that all that happened later. The same is essentially true here. What happens, the FERC, once it issues its penalty assessment order, all the adversarial litigation takes place in district court. It's tried to a jury. FERC has the burden of proof. And only after that judgment is entered by the district court is there an enforceable penalty. Our view makes sense of the statutory structure. You have the fork in the road and then two parallel means of determining liability for civil penalty. One is the traditional formal adjudication under the APA, subject to review in the Court of Appeals under APA standards. The second is a de novo trial before a district court, before a jury, which would be reviewed by the Court of Appeals the way you review jury verdicts. It's two totally different means of determining liability for these civil penalties. And then the roads come back together for the penalty recovery action, which can be initiated if the penalty is not paid. But why? So I guess to circle back to the language of 2462, it speaks broadly to action or proceeding. Why should we read into that that the proceeding itself must be tantamount to a live hearing in trial court in order to be considered a proceeding? I mean, I understand that there are cases that have analogized to it under those circumstances, like administrative hearings, but why does it need to be that way? The proceeding under 2462 is one to impose a civil penalty. And under Matthews balancing and under Goldberg v. Kelly, to impose substantial civil penalties, and this is a million dollars per instance, you need to have cross-examination. And that is absent in the – there's no live hearing, there's no cross-examination of adverse witnesses, no ability to gather our evidence with compulsory process in the FERC penalty assessment process under the judicial path. The proceeding – the fact that FERC's – the absence of due process protections in that administrative proceeding helps us understand the nature of the output of the FERC proceeding. It is not itself an enforceable penalty order. If we win this appeal and FERC's district court action is untimely, that order doesn't mean anything. It's just a piece of paper. It cannot be imposed on us. It cannot be enforced by FERC against us. That is the system that Congress created in this 823B subsection D, two parallel paths that come together after liability has been determined and then the – then FERC can initiate, as necessary, a penalty recovery action. The district court did not address the penalty recovery action of D-5, neither, for that matter, did the Fourth Circuit in the Powhatan case. That is a major deficiency in the reasoning of that case, and it's the glaring textual flaw in the district court's analysis. Section D-5 specifically contemplates that there would be orders – that there would be actions to enforce the district court judgments that emerge under D-3. But if D-3 is already an action to enforce a civil penalty, such as that this court spoke of in DLS, what is D-5 there to do? It only works if D-3 is where liability is being imposed in the first instance. And because liability is being imposed in the first instance in the D-3 process, that is why the statute of limitations needs to run from the date of the violation. Under FERC's view, it has at least 10 years before it needs to initiate that district court proceeding. As a practical matter, is that really the case? I understand there's the two-clock period of the first five years to the order to show cause. And then following, at least from FERC's account, following the administrative process, I suppose they could wait another five years before filing in federal court. But in practice, does that ever happen? I don't know that it does. I'm aware of one case where FERC has not issued a penalty assessment for, I think, something like 15 or 18 months and hasn't yet started its five-year clock to initiate the district court action. But that's, you know, the point is that FERC would have the tactical opportunity, if it wished, to delay the filing of that district court action. Well, let's talk about tactical opportunity that, say, someone, a violator, would have. Under your analysis, then the statute of limitations would run on the date of the violation in this case. Is that a correct understanding of your position? Yes. If that's the case, what's to prevent a violator to just delay this investigation process to go beyond that five-year statute of limitations? So two responses to that. First, I'm not aware of what powers a respondent in one of these proceedings realistically has to drag things out and delay it in the manner that the Powhatan case suggested. The second point is that that really would be an argument for equitable tolling. If the defendant is dragging their feet in a way that constitutes an extraordinary circumstance that the plaintiff couldn't have foreseen, that's an argument for equitable tolling. It's not an argument to extend the statute of limitations that Congress prescribed for civil penalties. Well, it's an argument about congressional design. As the Fourth Circuit was mentioning, you know, FERC is investigating very complex issues of market manipulation. It needs some level of time to investigate, to take evidence from the parties, to make that adjudication. And at least from the Fourth Circuit's telling, that could be a very truncated period if you cap all that and filing in Federal court to five years. Why — what is it in the law that suggests Congress intended for that to happen? Your Honor, Section 2462 goes back to 1839. The Federal Power Act and Section 823B is a much more recent invention. So the fact of the matter is that Congress wasn't thinking of the five-year statute of limitations when it created this bifurcated scheme. But that's the scheme it created. And if it is a proceeding to impose civil penalties in the first instance, even if everyone agrees, DLS commands that in that instance, if it's to impose liability in the first instance, then it runs from the date of the violation. It's important here because otherwise for the defendants, if this can be stretched out to ten years, they're going to be forced to defend themselves when memories have faded, witnesses have disappeared, evidence has been lost to corporate retention, document retention policies. It's going to be much harder for them to defend themselves in that instance. And it also creates this sharp imbalance in the statutory scheme that has two parallel paths. One has a five-year statute of limitations, the APA scheme. The other would have effectively a ten-year statute of limitations. That distorts what is supposed to be an election of remedies or, you know, processes, not so much remedies, but processes to determine liability. I'd like to reserve the balance of my time. You may. Thank you. Mr. Dynan? Yeah, Dynan, Your Honor. Good morning. May it please the Court, I'm Kevin Dynan, and I represent the Federal Energy Regulatory Commission. I'd like to start first, Your Honor, with a comment that my friend made about what the Federal Power Act requires. And he minimizes the requirements of that statute. The statute requires that FERC issue a notice of the proposed penalty. It requires that the Commission assess a penalty by order. And it has also a requirement that that penalty order has to be affirmed by a federal district court if the penalty is not paid within 60 days. While the Federal Power Act does not say there has to be a proceeding, something must take place to carry out those mandates of the Federal Power Act. And it is clearly not a prosecutorial decision. It's a proceeding. And if you look at what happens, and as the Fourth Circuit noted in Powhatan, it is a proceeding. The respondent has the opportunity to file an answer. And in their answer, they set forth the facts that support their position. They set forth their defenses. They set forth the law that supports their position. And as many respondents do, and VTOL did here, they attach to the answer deposition or testimony transcripts, documents, expert and fact witness declarations and affidavits, and expert reports. The VTOL response here was almost 100 pages long with an additional 100 pages of exhibits. And the Commission takes those documents. It takes enforcement's position and the staff report. And then it takes the answer. And they make a decision. They make an adjudicatorial decision on whether there was a violation and what the amount of the penalty should be. Mr. Dynan, I want to go to the point that Mr. McGill raised, which is, in essence, aren't you advocating for all practical means a 10-year statute of limitations? You could go almost five years and then have an additional five years under sort of the two-clock scenario that you've advocated. Is that what you're saying exists? Well, Your Honor, that two-clock scenario has been recognized by several courts, by the Powhatan Court construing this very statute, by the First, Sixth, Seventh, and Eighth Circuits construing other statutes applying 2462. So that's not a novel proposition. And the reason all the courts have done that is because of the statute. Well, hold on. Now you're saying that it's not a novel, but so the answer is yes to my question, correct? Yes, Your Honor. Okay. Yes. Because it's been recognized by other courts that if you look at the language, the plain language of the statute, that's the way it works. But if I remember correctly, didn't DLS point out that those other actions were following an administrative hearing? In those other circuits? Other than the Fourth Circuit's one. There was an administrative proceeding, and there was an administrative proceeding here, Your Honor. And the reason there was an administrative proceeding is because you had to have something to carry out the mandates of the Federal Power Act. And how do you respond to Mr. McGill's contention that this proceeding is too truncated to satisfy due process concerns to be considered a proceeding for purposes of 2462? Well, it's not too truncated, Your Honor. The key to due process is an opportunity to be heard at a reasonable time and in a reasonable manner. As Matthew's court held, not everything, not every proceeding, has to be like a judicial proceeding to meet due process. The key is, does the respondent here have the opportunity to present evidence? And they do have that opportunity. They have the opportunity through their answer. Will they cite facts? Will they give deposition testimony? Will they attach documents? Now, my friend mentioned the Goldberg case. The Goldberg case is really the outlier because there what you were dealing with was the termination of welfare benefits. That's a special case. And the court recognized that when you're dealing with the termination of welfare benefits, the person whose benefits are being terminated needs to be able to do a lot of things because if they lose those benefits, they don't have the ability to buy food, they don't have the ability to get medical care, and things like that. Does your case rise or fall on whether we consider this process a proceeding? Your Honor, I think it does rise or fall on whether it's a proceeding. But I should also say, as the district court recognized, the entire show cause process is a proceeding, and VTOL waived its right to take the ALJ route. So there's an alternative option, but our view is it is a proceeding. Either the whole process, but more particular, the alternative route is a proceeding also. So when we're applying 2462 to this scenario, it's a little bit odd to say that the culmination of the administrative process is the triggering event that causes the accrual of your cause of action. And when the action that's in court really doesn't have much to do with the administrative process, right? It's not record review under the APA. It's just this de novo proceeding. So why isn't it more reasonable to view the administrative process as akin to the exhaustion requirement in SOTO? Because it's a statutory requirement. And let me just address SOTO, because SOTO supports our position. There, one of the things the court noted is that once the conduct, the violation took place that led to the 1983 action, there was nothing more out of the administrative process that the court needed to render a decision, that the district court needed. That's not true here. There is something more you need for the district court to render a decision here, which is you need the assessment of the penalty by the commission, and then you need to wait 60 days. So SOTO actually supports our position here because that's a big distinguishing feature. But, I mean, I want to be sure I understand the distinction. Because under the PLRA, like, you have to have gone through the administrative process. Correct. And here, like, you have to have gone through the process and I guess gotten the result. But the court doesn't need anything else. It doesn't matter whether there was any evidence or any reasoning. It doesn't actually have to look at any of that. It's taking all new evidence. But the additional thing that has to happen is a big thing, because you can't sue to affirm a penalty order if the penalty order doesn't exist. And that's one of the things that the Meyer Court and the Powhatan Court and the other courts recognized. And that's a distinguishing feature from the SOTO case. Because, again, the SOTO case said nothing more has to happen at the administrative level. But here it does. You have to have that penalty order. And to just think about it, as the courts in Meyer and Powhatan pointed out, if the statute started to accrue at the time of the violation and it might run before the penalty was assessed, that would be an illogical result. It would be an unreasonable result. And statutes are not construed to provide unreasonable results. Why is it unreasonable? Because the statute is running against you, right? Correct. And you are in a pretty good position to control the timing of the administrative process, aren't you? No, we're in a terrible position. Why is that? So when we conduct our investigations, they're preliminary investigations. The Office of Enforcement does not have subpoena power. So we rely very much on the cooperation of the subjects of the investigations to provide documents, to provide witnesses. We don't control the timing. Now, if you have a particularly recalcitrant subject, enforcement can go to the commission and it can seek an order, turning the investigation into a formal investigation. And at that point, we do have subpoena power. But if we continue to have a recalcitrant subject, then we have to go to a district court to have the subpoena enforced. And as the old saying goes, the wheels of justice sometimes turn slowly. So we don't have control over that investigative process as far as the timing. Also, even when you have cooperative respondents, like VTOL in this case, they sometimes come up with late defenses. There were nine witnesses where testimony was taken of them during this investigation. There were almost 200,000 documents that are part of the administrative record. Late in the process, VTOL raised a brand-new defense, Advice of Counsel. And so the commission or the Office of Enforcement had to go back and retake some of the testimony, take new testimony because of that new defense. And that's being done in fairness to the respondents, the subjects in the cases, to make sure that they have the opportunity to present all the information that they want to present during the investigation. Counsel, I just want to understand one thing. FERC issued their penalty order on October 25, 2019. Yes. That would have been three days before that statute of limitations, assuming that VTOL is right about the time when the clock starts. That's still within that statute of limitations period, correct? That's correct. But FERC can't act for 60 days by statute, right? You have to wait 60 days in order for you to file and enforce that penalty order, correct? That's correct. We are barred from doing anything during that 60-day period. So the argument, I guess, would be you wait that long. That's on you, I guess. That's what VTOL would say, right? You waited this long to produce your penalty order. Or should we say, well, because we can't file suit to enforce this penalty order, we should allow this tolling to take place? Well, Your Honor, it's first our position that the alternative route is proceeding and the two clocks apply. But if the court does not agree with that, then, yes, that 60-day period should be tolled. And it's an exceptional circumstance. And as this court has recognized in the Sierra Club. What's exceptional? What's exceptional is we're barred from doing anything for 60 days. Just like in Sierra Club, the citizen plaintiff is barred for 60 days after giving notice from filing a lawsuit. But the Ninth Circuit has recognized a rule that if you have to resort to an administrative body first before you can bring a federal lawsuit, that the statute of limitations will be tolled during that time period. We could do nothing about that 60-day period. And another thing out of Sierra Club that's instructive is in Sierra Club, the court noted that if we did not toll the statute of limitations, then the citizen plaintiff has 60 days less than the government plaintiff to file a lawsuit. Well, here, if that 60-day period is not tolled, we have 60 days less than other enforcement agencies to bring an action under 2462. And we also have 60 days less than we would have under the statute of limitations period if the party chose the ALJ route rather than the alternative route. Let me circle you back to SOTO. Earlier you made the point that here something has to happen, a penalty assessment. But couldn't you argue that in SOTO the same thing happens? There has to be some point at which administrative remedies have been exhausted. And I grant you, you know, the exhaustion process is much more streamlined, I'm well aware of it, than the process that occurs here. But given that something has to end in the administrative exhaustion process in SOTO as well, why is that different than here? Well, I note a couple of things, Your Honor. One is policy reason. Now, when you're dealing with 1983 action and you're having the exhaustion of administrative remedies, it's to keep cases out of court. Here, we don't have a comparable policy concern. When Congress enacted the Federal Power Act, what they wanted to do was give the Commission the ability to protect the interstate electric markets and to protect the interstate bulk transmission markets, to make sure that they were reliable with respect to the transmission markets and to make sure they function reasonably with respect to the electric markets. So there's a different policy concern at issue. The other thing, obviously, in SOTO is the court held or recognized the exception that the exhaustion doesn't matter because we're going to toll the statute during that exhaustion period. So I think those facts differentiate SOTO from the case here. Now, turning back to the proceeding here in the alternative route, another thing I want to mention is, you know, the Commission is the one directed to assess the penalty. And I know in their briefs, Appellant cited the Marshall case and placed great emphasis on the Marshall case. And that's one of the things the district court looked at in the Barclays decision. But Marshall is inapposite to this situation. In Marshall, what you were dealing with was an assistant regional administrator from the Department of Labor, who, as the court noted, did not make any factual determinations. It did not make any legal determinations. And so the court in that case, which dealt with the issue, was that assistant regional administrator biased, held he's not biased because he's acting more like a prosecutor. Here what the Commission did is it entrusted and instructed, I'm sorry, what Congress did was entrusted and instructed the Commission to assess the penalty. And all the time you have agency heads who are involved in supervising investigations and later play an adjudicatory role. And the general rule is unless there's some special circumstance, they're not considered to be not neutral or biased. We don't have those exceptional circumstances here. The commissioners did not have any personal financial interests. They did not have any personal animosity to the individual respondents in this case. Have the commissioners ever turned down an OSC to impose penalties? Well, Your Honor, they have done so in part, which also shows their neutrality. For example, in the Coltrane case, which we mentioned on our brief, the Commission refused to assess a penalty against one of the respondents in that case and dismissed the proceeding against that respondent. Here, as another example, the Commission reduced the penalty that was proposed against VTOL from $6 million to $1.5 million. That's a 75% reduction. The commissioners have issued dissents in other matters. In the Maxim and Greenhat matters, we had one commissioner in each dissent saying, our view is that no violation has been shown as to anyone and there should not be any penalties assessed. Now, prosecutorial decisions, they don't have dissents. But all of those factors show the neutrality in the adjudicative nature of this process. With the district court, and I believe the Citi Bower case indicated, one of the things that would show in adjudicative nature is exactly what I just mentioned that the commissioners do here. Now, another thing that shows the neutrality is both the Administrative Procedures Act and the Commission's regulations have those guardrails of separation of functions and also the ex parte rule. Another thing, Your Honor, is the regulations. Congress in the Federal Power Act does not specify how the commission should conduct its proceedings. They leave that to the commission to come up with its own regulations, its own rules, its own orders. And here, what the commission has done through its regulations is they have come up with that adversarial proceeding, again, where you have the ability to file an answer. And my friend wants to downplay the filing of an answer, but again, the VTOL answer was almost 100 pages long, filled with fact citations, citations to law, defenses, and affirmative defenses. Can I? Sorry to interrupt, but let me pull you to a different point. Opposing counsel mentioned that if this was an enforcement action, there's a separate statutory provision for that under D-5, and this is under D-3. So why have two different enforcement actions under separate statutory provisions if one expressly talks about it there? Well, I wouldn't. Well, first, I will say, and I think everybody's agreed to this, that we have a unique statutory provision with respect to FERC under the Federal Power Act. But I would not agree that D-5 is an enforcement provision. D-5 comes into play when everything has happened, when you have a final judgment in federal district court no longer subject to appeal, or when you have an appellate decision on the default route that has already taken place. What we're dealing with under D-3 is a process to infirm the assessment of the penalty. Even though the language says enforce for enforcement? I'm sorry? Even though the language of D-3 talks about? Am I wrong? Oh, no, no, I'm looking at 2462. I apologize. I think it says affirm, Your Honor. And the other thing is once you get to D-5, any of the underlying considerations with respect to statute of limitations don't apply. Everything is over, and it's just at that point, what do we do to get the money back? Your Honor, I see my time is up. Thank you very much. Thank you. Thank you. McHale. Thank you, Your Honor. FERC's penalty assessment process under the judicial path is not one that constitutionally can impose penalties, so it can't be a proceeding to impose a penalty within the meaning of Section 2462. FERC needs to win that argument, but we do not. If this is a proceeding that imposes liability in the first place, then under this Court's decisions in DLS and FEC v. Williams, then the clock runs from the date of the unlawful conduct. That here is October of 2013. The complaint, I point you to Excerpts of Record 171. The complaint here has one and only one cause of action. It is for violations of the market manipulation statute and the commission's anti-manipulation rule. That is what is being litigated in district court. They are working to impose liability on us in the first instance. They are assembling witnesses to demonstrate that trades that happened in 2013 were undertaken with a purpose to defraud. FERC's penalty assessment order is utterly irrelevant to that proceeding. Well, it's not. I mean, but for the order, the proceeding couldn't happen, right? But for the order, the proceeding could not yet be initiated, correct. But that doesn't change that the order itself, that order does not impose the liability. And if they, I mean, are they, even if they put in lots of evidence, if the district court concludes that what you did was so bad that it should impose more than a $1.5 million penalty, can it do that? It cannot, but only because of the district court, at least. I don't think this has been litigated. In fact, no case I'm aware of has fully gone to judgment. But what the district court held was that the commission's penalties are limited by the notice that is provided under Section D.1 in the order to show cause. So it can exceed, in theory, the penalty assessment order, but not the amount noticed in the order to show cause under the district court's ruling. I would emphasize, if FERC does not file the action in district court at all, or if it files it out of time, the penalty assessment order has no legal effect. That demonstrates that the liability is being imposed in the first instance in district court. The last point is they have no persuasive answer to subsection D.5. If the action here does what they say it does, there is no need for them ever to resort to D.5, but Congress expressly contemplated that such actions would be filed. Why not? Let's say it goes through the administrative process, it's affirmed on appeal, and yet the party does not pay the penalty at that point. Then you have recourse to D.5, don't you? So, if I may, Your Honor. Yes. Under D.5, it provides for actions both to enforce orders issued under subsection D.2, that's the administrative process you just referred to, and separately, judgments issued under D.3. Thank you. Thank you very much. We thank both counsel for their helpful arguments. The case is submitted, and that concludes our calendar for the morning.
judges: MILLER, SANCHEZ, UNKNOWN